United States District Court
District of Maine

| | |
|---|---|
| Bayley's Campground, Inc., d/b/a Bayley's Camping Resort; FKT Resort Management, LLC; FKT Bayley Limited Partnership; DMJ Parks, LLC, d/b/a Little Ossipee Campground, LLC;  Curtis Bonnell of Salem, NH; Dolores Humiston of Meredith, NH; James Boisvert of Scarborough, ME,<br><br>　　　　Plaintiffs<br><br>v.<br><br>Janet T. Mills, in her official capacity as the Governor of the State of Maine<br><br>　　　　Defendant | Civil Action No. |

**Complaint for Declaratory Judgment and Injunctive Relief**

Plaintiffs, by and through their undersigned attorneys, hereby allege against Defendant the following:

**Parties**

1.　　Plaintiff Bayley's Campground, Inc., d/b/a Bayley's Camping Resort, is a corporation organized under the laws of the State of Maine, with a principal place of business in Scarborough, Maine.

2.　　FKT Resort Management, LLC is a limited liability company organized under the laws of the State of Maine, with a principal place of business in Scarborough, Maine, and the management entity of Little River Bar & Grille and the Seaside Square Café.

3.　　Plaintiff, FKT Bayley Limited Partnership, is a limited partnership organized under the laws of the State of Maine, with a principal place of business in Scarborough, Maine.

4. DMJ Parks LLC, d/b/a Little Ossipee Campground, is a limited liability company organized under the laws of the State of Maine, with a principal place of business in Waterboro, Maine.

5. Curtis Bonnell is an individual who resides in Salem, New Hampshire.

6. Dolores Humiston is individual who resides in Meredith, New Hampshire.

7. James Boisvert is an individual who resides in Scarborough, Maine.

8. Defendant Janet T. Mills is the Governor of the State of Maine and is sued in her official capacity only.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over Plaintiff's claims under its federal question jurisdiction, 28 U.S.C. § 1331.

10. Venue is properly in the District of Maine under 28 U.S.C. § 1391(b)(1)-(2) because Defendant Janet T. Mills is the Governor of the State of Maine, resides in the State of Maine, and because a substantial part of the events or omissions giving rise to the claim occurred in the State of Maine.

## Executive Orders and Restarting Plan

11. The Governor of the State of Maine is statutorily authorized to issue an emergency proclamation, which authorizes the use of enumerated emergency powers under 37-B M.R.S. § 742.

12. On March 15, 2020, Governor Mills declared a state of emergency proclamation to authorize the use of emergency powers with respect to COVID-19.

13. On March 24, 2020, Governor Mills issued Executive Order 19 FY 19/20, which selected Maine businesses as "essential" and "non-essential," and directed non-

essential businesses to "cease activities at sites that are public facing and thereby allow customer, vendor, or other in-person contact; or are sites that require more than 10 workers to convene in space where social distancing is not possible."

14. On April 3, 2020, Governor Mills issued Executive Order 34 FY 19/20, which ordered that all lodging operations must close as non-essential businesses, subject to certain enumerated exceptions. The Order defines lodging operations to include campgrounds.

15. Executive Order 34 FY 19/20 further orders that, "To preserve the public health and safety, to ensure the public health and health delivery system are capable of serving all, and to help protect those at the highest risk and vulnerability, any person, resident or non-resident, traveling into Maine must immediately self-quarantine for 14 days or for the balance of 14 days dating from the day of arrival, except when engaging in essential services as defined in Executive Order 19 FY 19/20."

16. By contrast, New Hampshire, the only state with which Maine shares a border, does not have any quarantine requirements for people entering the State.

17. Executive Order 34 FY 19/20 also bans all travel from certain regions as follows: "Visitors are instructed not to travel to Maine if they are displaying symptoms of COVID-19, and are advised not to travel to Maine if they are travelling from cities and regions identified as COVID-19 'hot spots,' including, among others, the cities of Detroit, Chicago and New York City. In addition, residents of the States of New York, New Jersey and Connecticut should refrain from travel to Maine in strict compliance with USCDC travel guidance issued Saturday, March 28, 2020 and any subsequent travel guidance that may be issued during the pendency of this Order." Executive Order 34 FY 19/20 § 1 (4).

3

18. Executive Order 34 FY 19/20 states that a violation may be charged as a Class E crime subject to a penalty of up to six months in jail and a $1,000 fine. In addition, Executive Order 34 FY 19/20 orders that it "may be enforced by any governmental department or official that regulates, licenses, permits or otherwise authorizes the operations of occupancy of buildings, parks and campgrounds[,]" and that a violation of the Order "may be construed to be a violation of any such license, permit or other authorization to which pertinent penalties may be assessed."

19. Upon information and belief, the Governor and state officials have utilized local and county law enforcement to enforce the Executive Orders, and intend to penalize, through criminal penalties and/or regulatory permitting or licensing consequences, those businesses and individuals that defy the order.

20. On April 29, 2020, Governor Mills issued Executive Order 49 FY 19/20, which extended the effective dates of the Executive Orders described above through May 31, 2020 and purported to incorporate a "Restarting Plan."

21. Governor Mills delegated implementation of the Restarting Plan to the Department of Economic and Community Development ("DECD"), an agency headed by Commissioner Heather Johnson.

22. Commissioner Johnson has acted as the public face of the Restarting Plan, and a conduit for feedback from the public and business community to the Governor's office and heading DECD, the agency tasked with implementing the Plan.

23. Commissioner Johnson has hosted a series of Zoom videoconference meetings for the public and business community in which she answers questions and provides guidance on the Executive Orders and Restarting Plan.

24. Statements of interpretative guidance made by Commissioner Johnson make clear that the 14-day quarantine requirement is interpreted strictly.

25. Quarantine requires the individual to remain at home, to refrain from leaving home to gather necessary items such as groceries, not interact with others, and precludes, among other activities, engaging in commerce.

26. The requirement applies to all border crossings, including de minimis crossings by Mainers in "border towns" that cross back and forth daily for work, activities, and to engage in commerce.

27. For example, an individual that crosses from Maine into New Hampshire to visit a business there, and immediately returns to Maine must self-quarantine upon return.

28. Commissioner Johnson has alluded to alternatives to quarantine requirements, including testing, although to date none have materialized.

29. The "Restarting Plan" is published on a website, available at https://www.maine.gov/covid19/restartingmaine, and sets forth four gradual stages of reopening Maine's economy.

30. "Stage 1, May" of the Restarting Plan "contemplates a continued . . . 14-day quarantine on people entering Maine[,]" and identifies several businesses that may re-open, so long as they comply with detailed checklists. Lodging operations are not among the businesses that may re-open during Stage 1.

31. "Stage 2, June" of the Restarting Plan "contemplates a continued . . . 14-day quarantine on people entering Maine." Stage Two provides that lodging operations and Campgrounds/RV parks may "[o]pen to Maine residents and out-of-state residents who have completed quarantine guidelines."

32. The Stage 2 "checklist" for Campgrounds provides, among other things, "Guest visitation restricted to Maine residents and out of state visitors who have met the 14-day quarantine requirement at this time per executive order."

33. "Stage 3, July—August" of the Restarting Plan "maintains . . . the 14-day quarantine on people entering Maine." Stage 3's list of openings includes, "Lodging, such as hotels, campgrounds, summer camps, or RV parks for Maine residents and visitors. The Administration is developing guidelines (e.g. potential testing requirements) to assist them in safely reopening."

34. "Stage 4, TBD" only reads "All businesses are open and operating with appropriate safety modifications." The Restarting Plan does not specify when Stage 4 will be implemented or whether the 14-day quarantine restriction will remain in effect.

35. The Governor has since modified the initial Restarting Plan by announcing a separate plan known as the "Rural Reopening Plan" that will apply in Maine's twelve "rural" counties.

36. The Governor rolled out the Rural Reopening Plan on May 8, 2020.

37. According to the website, "retail stores and restaurants in Aroostook, Piscataquis, Washington, Hancock, Somerset, Franklin, Oxford, Kennebec, Waldo, Knox, Lincoln, and Sagadahoc counties will be permitted to open in-store and dine-in service with enhanced safety precautions. Additionally, remote campsites as well as sporting camps are also permitted to reopen with public health safeguards in these counties."

38. The Rural Reopening Plan does not apply to York, Cumberland, Androscoggin, or Penobscot counties.

39. The Governor's Rural Reopening Plan creates two classes of businesses—those in rural counties and those everywhere else—the former allowed to reopen, while the latter remain closed.

40. The Governor has justified the distinction on the basis that those counties have not experienced community transmission.

## General Allegations

41. By March 25, 2020, Maine met the U.S. Centers for Disease Control ("CDC") criteria for a moderate level of community transmission of COVID-19. The Maine Centers for Disease Control ("Maine CDC") has reported signs of community transmission of COVID-19 as early as March 16, 2020 in Cumberland County, and March 26, 2020 in York County.

42. As of May 14, 2020, Maine CDC is reporting 1,515 total cases of COVID-19, which includes 744 cases in Cumberland County, and 269 cases in York County, see https://www.maine.gov/dhhs/mecdc/infectious-disease/epi/airborne/coronavirus.shtml.

43. As of May 13, 2020, Maine CDC has conducted 33,035 tests.

## Campground Plaintiffs

44. Plaintiffs, Bayley's Campground, Inc. and Little Ossipee Campground, LLC ("the Campgrounds"), operate campgrounds located in Cumberland and York Counties, respectively.

45. FKT Bayley Limited Partnership, operates FKT Resort Management, LLC, which manages the Little River Bar & Grille as well as the Seaside Square Café, which offer food and drink to patrons of Bayley's Campground.

46. The camping season in Maine generally runs from Memorial Day through Columbus Day weekend. A substantial number of the visitors to the Campgrounds are out-

of-state residents. Collectively, visitors to Maine campgrounds inject millions of dollars into Maine's economy every summer.

47. The Campgrounds have all experienced an economic injury from the 14-day quarantine restriction, as a there have been a substantial number of cancellations by out-of-state campers who are unable or unwilling to self-quarantine for 14-days upon their arrival to Maine. Many of these cancellations specifically reference the 14-day quarantine restriction as the reason for the cancellation.

48. The Campgrounds have a compelling interest in defending the constitutional rights of their customers, who wish to access the Campgrounds' services but cannot do so as a result of the travel restrictions. In addition, the 14-day quarantine restriction on people entering the State of Maine is inextricably linked with the limitations placed on campgrounds in the Restarting Plan. Those limitations risk depriving the putative campers of a judicial forum because the Campgrounds are ordered to be closed as to out-of-state visitors who have not completed a 14-day quarantine. The Campgrounds' assertion of these rights is congruent with both the interests of the Campgrounds and the customers.

49. FKT Resort Management, LLC, separately, by and through the Little River Bar & Grille and the Seaside Square Café, has suffered an economic injury by not being permitted to reopen under the current Executive Orders, DECD guidance, and the Governor's reopening plan.

50. Little River Bar & Grille and the Seaside Square Café are located in Scarborough, Cumberland County.

51. If the Little River Bar & Grille and the Seaside Square Café were located in Aroostook, Piscataquis, Washington, Hancock, Somerset, Franklin, Oxford, Kennebec,

Waldo, Knox, Lincoln, or Sagadahoc county, they would be allowed to reopen under the Rural Reopening Plan.

## Individual Plaintiffs

52. Absent the 14-day quarantine restrictions, James Boisvert, who resides in Scarborough, ME, would exercise his right to interstate travel and temporarily leave Maine to travel out of state to recreate, associate with friends, visit businesses, and simply take trips through New Hampshire for a variety of purposes. (*See* Boisvert Aff.)

53. The mandate that people entering the State of Maine quarantine for 14-days practically deprives Mr. Boisvert from traveling as desired.

54. Mr. Boisvert is scheduled to leave the State of Maine on May 18, 2020 and he intends to return to Maine on May 29, 2020. The mandate that people entering the State of Maine quarantine for 14-days will require Mr. Boisvert to quarantine for 14-days by the mere fact of crossing the Maine border.

55. Absent the quarantine restrictions, Curtis Bonnell, who resides in Salem, NH, would exercise his right to interstate travel to enter the State of Maine. (*See* Bonnell Aff.)

56. The mandate that people entering the State of Maine quarantine for 14-days practically deprives Mr. Bonnell from traveling to Maine as desired.

57. Absent the quarantine restrictions, Dolores Humiston, who resides in Meredith, NH, would exercise her right to interstate travel to enter the State of Maine. (*See* Humiston Aff.)

58. The mandate that people entering the State of Maine quarantine for 14-days practically deprives Ms. Humiston from traveling to Maine as desired.

59. The executive orders provide no mechanism for the individual plaintiffs to challenge the requirement that they self-quarantine for 14-days after entering Maine.

**COUNT 1**
**(42 U.S.C. § 1983 and Declaratory Judgment – Violation of the Constitutional Right to Travel)**

60. Plaintiffs reallege and incorporate by reference all other allegations contained in this Complaint.

61. The United States Supreme Court has held that the "'constitutional right to travel from one State to another' is firmly embedded in our jurisprudence." *Saenz v. Rose*, 526 U.S. 489, 498 (1999) (quoting *United States v. Guest*, 383 U.S. 745, 757, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966)). This right is "virtually unconditional." *Id.* (quoting *Shapiro v. Thompson*, 394 U.S. 618, 643, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969)). *See also United States v. Guest*, 383 U.S. 745, 757, 86 S. Ct. 1170, 16 L. Ed. 2d 239 (1966) ("The constitutional right to travel from one State to another ... occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized.").

62. Likewise, the Maine Constitution provides that "All people are born equally free and independent, and have herein certain natural, inherent and unalienable rights, among which are those enjoying and defending life and liberty, acquiring, possessing and protected property, and pursuing and obtaining safety and happiness[,]" Me. Const. Art. I, § 1, and that "No person shall be deprived of life, liberty or property without due process of law," Me. Const. Art. I, § 6-A.

63. The restrictions in the Executive Orders and incorporated Restarting Plan infringe on the right of interstate travel, as guaranteed by the Privileges and Immunities Clause of Article IV of the U.S. Constitution, the Privileges or Immunities Clause of the

Fourteenth Amendment, the substantive due process component of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Article I, of the Maine Constitution.

64. The restrictions on interstate travel in the Executive Orders and incorporated Restarting Plan are neither narrowly tailored nor the least restrictive means for advancing a compelling governmental interest. In contrast, these restrictions significantly burden the right to interstate travel and cause a chilling effect on interstate travel.

65. By enacting the restrictions on interstate travel, Governor Mills, acting under color of law, has deprived citizens of Maine and the citizens of the several States of their fundamental right to travel, as guaranteed by the Maine Constitution and the United States Constitution, in violation of 42 U.S.C. § 1983. Plaintiffs seek a declaration that the Executive Orders and Restarting Plan violate the right to interstate travel, and an injunction against further infringement of this right.

**COUNT 2**
**(42 U.S.C. § 1983 and Declaratory Judgment – Procedural Due Process)**

66. Plaintiffs reallege and incorporate by reference all other allegations contained in this Complaint.

67. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1, cl. 3. The U.S. Supreme Court has stated that "[T]here can be no doubt that at a minimum [procedural due process] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and

opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

68. Article I, Section 6-A of the Maine Constitution provides that "No person shall be deprived of life, liberty or property without due process of law. . . ."

69. Individuals have a substantive and procedural due process right to be free from government interference and restriction of their liberty.

70. The Executive Orders and 14-day quarantine requirement apply to Plaintiffs and similarly-situated individuals without respect to whether they have COVID-19 or present a risk of transmitting the disease.

71. Plaintiffs have no opportunity to challenge the basis for their quarantine, nor to exercise their rights without threat of criminal penalty.

72. The Executive Orders and 14-day quarantine requirement deprive Plaintiffs of their liberty without due process of law.

73. The restrictions on interstate travel deprive Plaintiffs and their customers of their constitutional rights, as discussed above, without any pre- or post-deprivation process.

74. By enacting the restrictions on interstate travel, Governor Mills, acting under color of law, have deprived citizens of Maine and the citizens of the several States of procedural due process, as guaranteed by the Maine Constitution and the United States Constitution, in violation of 42 U.S.C. § 1983. Plaintiffs seek a declaration that the Executive Orders and Restarting Plan violate the right to interstate travel and due process, and seek an injunction against further infringement of these rights.

## COUNT 3
### (42 U.S.C. § 1983 and Declaratory Judgment - Violation of Due Process, Equal Protection: Rural Reopening Plan)

75. Plaintiffs reallege and incorporate by reference all other allegations contained in this Complaint.

76. The United States Constitution guarantees that "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; Me. Const. art. I, § 6-A.

77. The Maine Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws." Me Const. art. 1, § 6-A.

78. Although the Maine Constitution is considered coextensive with the United States Constitution, Maine's Constitution and Declaration of Rights has independent meaning and vitality. *See Portland v. Jacobsky*, 496 A.2d 646, 649 (Me. 1985).

79. Businesses in all parts of Maine are similarly situated, in that during the summer seasonal months, they cater to Mainers and out-of-state visitors alike.

80. The Rural Reopening plan creates "winners" and "losers" of the same, similarly situated businesses, based solely upon their location within the State of Maine, even though they carry on the same activities, provide the same services, and cater to the same clientele.

81. The distinction between counties is an unlawful discrimination against businesses based upon their county of operation, and is unreasonable, arbitrary, capricious, and without a justifiable rational basis.

82. The Rural Reopening Plan violates the Due Process and Equal Protection Rights of businesses located in Maine that are not designated as "rural" counties.

83. Rural Reopening Plan violates the Due Process and Equal Protection rights of FKT Resort Management's restaurant and bar operations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(A) Declare that the challenged orders unconstitutionally infringe upon Plaintiffs' rights to interstate travel, due process, and equal protection;

(B) Enjoin enforcement of the unconstitutional aspects of the challenged orders;

(C) Award Plaintiffs their costs, including reasonable attorney fees, as allowed by 42 U.S.C. § 1988; and

(D) Award Plaintiffs such further and other relief as the Court deems fit.

**JURY DEMAND**

Plaintiffs request a jury trial on all issues so triable.

                                        Plaintiffs,
                                        By their attorneys,

Dated: May 15, 2020                      /s/ Gene R. Libby
                                        Gene R. Libby, Esq., Bar No. 427
                                        Libby O'Brien Kingsley & Champion, LLC
                                        62 Portland Road, Suite 17
                                        Kennebunk, ME 04043
                                        Tel:  (207) 985-1815
                                        glibby@lokllc.com

Dated: May 15, 2020                      /s/ Tyler J. Smith
                                        Tyler J. Smith, ME Bar # 4526
                                        Libby O'Brien Kingsley & Champion, LLC
                                        62 Portland Road, Suite 17
                                        Kennebunk, ME 04043
                                        Tel:  (207) 985-1815
                                        tsmith@lokllc.com

Dated: May 15, 2020 /s/ Keith P. Richard
Keith P. Richard, Esq., Bar No. 5556
Libby O'Brien Kingsley & Champion, LLC
62 Portland Road, Suite 17
Kennebunk, ME 04043
Tel:  (207) 985-1815
krichard@lokllc.com